Caroline Doll et al., Respondents, v. Amanda Fricke et al., Appellants.—171 S. W. (2d) 755.

Kansas City Court of Appeals. May 24, 1943.

*Clark, Boggs, Peterson & Becker, Howard B. Lang, Jr.,* and *William L. Nelson, Jr.,* for appellants.

1150

*L. G. Graf* and *Joseph T. Tate* for respondents.

SPERRY, C.—This is a will contest suit instituted by Caroline Doll, Clara Emo, and Victor Scholten, children of Theodore Scholten, deceased and Mercedes Poeschel Hensley, a granddaughter, contestants, against Amanda Fricke and Hilda Berend, daughters of deceased, contestees. The purpose of contestants was to have the purported last will of deceased declared to be invalid. Trial was before the court, a jury having been waived. The judgment was that the will is invalid because of undue influence exerted over the mind of deceased by contestees. Contestees have appealed.

The undisputed facts are that deceased and his wife lived on deceased's farm near Hermann, together with their son Victor, and his family; that deceased's wife died in 1937; that shortly thereafter deceased made will No. 1, by which he gave Mercedes Hensley $25 and divided the remainder of his estate equally between his five children above named; that in March, 1938, deceased rented his farm to Victor and made his home with him; that in April, 1938, appellants accompanied deceased to the office of lawyer Graf who, on instructions of appellants and of deceased, drew will No. 2, wherein deceased directed that all of his property be divided equally between the parties hereto, that is, that each of his children should receive 1/6 and that Mrs. Hensley should receive 1/6; and that appellants should jointly execute said will. The evidence further showed that, thereafter, appellant Fricke, on April 20, 1938, accompanied deceased to lawyer Graf's office and Fricke told the attorney that deceased wanted a new will drawn, the new will to contain the same provisions as will No. 2, except that Fricke alone was to be named therein as executrix; that deceased directed that will No. 3, in

accordance with such instructions, be drawn, and that same was drawn and executed; that some time thereafter deceased, accompanied by Berend, came to attorney Graf's office and Berend asked if deceased had made a will different from will No. 2 and was informed that he had, and was shown a copy of it; that Berend was very angry toward Fricke and said that deceased did not know what he was doing and was being led by first one and then another, and that: "This has to be changed;" that attorney Graf read will No. 3 to deceased and Berend and that Berend approved the section which divided the property equally between the parties to this contest, but disapproved of other portions thereof, particularly the nomination of Fricke as executrix; that she and deceased left, Berend stating that: "We will look into this thing;" that some time during the first half of 1938 ill will developed between deceased and Victor, and the latter ordered deceased to leave the farm, which deceased did and, from that date until his death, made his home alternately with appellants; that on July 11, 1938, the will, which is here contested, it being will No. 4, was drawn by attorney Mundwiller.

In connection with the draft and execution of will No. 4, the evidence is as follows: that deceased, alone, went to Mundwiller's office and told him he wanted to draw a will for him and gave him explicit instructions as to its provisions; that Mundwiller made notes and told deceased to come back later and he would have it ready; that deceased returned to the office, either later that afternoon or the next day, and Mundwiller read the will to him and deceased approved of it; that Mundwiller told him to go to the barber shop, under the attorney's office, and get a witness; that deceased left and returned with witness Wessell and the will was thereupon duly signed and executed by deceased and witnessed by Wessell and Mundwiller; and that no one, other than deceased and the witnesses, was present at any of said time.

Wessell, Mundwiller and others testified that deceased was of sound mind and memory. The will bequeathed $50 to Mrs. Hensley and contained the following provisions which are here material:

"Third: To my daughters, Caroline Doll and Clara Emo and to my Son, Victor Scholten, I leave nothing under and by virtue of this my last will and testament. Each of said three children having received their ample share during my lifetime. Furthermore from each of said three children I have received insulting and disrespectful treatment during my liftime, and it is for said reasons that I hereby disinherit each of said three children.

"Fourth: I give, devise and bequeath, all the rest, residue and remainder of my estate . . . real, personal or mixed property including . . . unto my daughters, Amanda Fricke and Hilda Berend, absolutely, and in fee simple, share and share alike."

Appellant Berend was named as executrix.

There was evidence to the effect that deceased's wife, at the time of her death, owned some real estate and personal property and that deceased administered her estate, converted the property into cash, paid the debts and distributed the residue; that he owned a farm, the only property affected by this will, a house in town, which he sold in 1938, after repairing it, for a good sound price, and some notes against some of his children, which notes he collected; that he was in ill health from the time his wife died until he passed away; that he conducted his own banking business with the aid of employees of the bank; that he had a serious disagreement with his son, Victor, during the spring of 1938, prior to the making of the last will, and caused a criminal complaint to be issued against him; that he left the farm *in June or July of 1938, prior to making his last will,* and thereafter resided alternately with appellants; that Victor, Doll, and Emo failed to visit deceased from that time until his death, nor did he visit them, although he visited occasionally with his daughter, Caroline Doll, on the streets and in the park at Hermann a few times during this period; and that he either sued or threatened to sue respondents Doll and Emo for collection of notes owed by them either to deceased or to their mother, and which they paid; and that he foreclosed a mortgage securing a note given as payment for farming equipment which he had previously sold to Victor and upon which Victor had neither paid principal nor interest.

The trial court found that there was no issue made of deceased's mental incapacity but found the will in question was not the last will and testament of deceased for the reason that same was induced by reason of undue influence over the mind of deceased, exercised and brought to bear by appellants. If there is any substantial evidence which supports the judgment it must stand, because the trial court, after waiver of a jury, had the sole responsibility of weighing the evidence.

Respondents contend that deceased, at the time of execution of the will, was weakened in mind and body because of his advanced age (he was about 77 years old), and because of his diseased condition, (he suffered from leakage of the heart and alcoholism). There was substantial evidence of the existence of these conditions and, after verdict we are bound to consider the conditions proved; but it must be borne in mind that the court found that deceased had mental capacity to make his will and, therefore, we can only consider his weakened physical and mental condition in connection with the charge of undue influence, it being generally recognized that one in such condition is usually more easily influenced than one who is strong mentally and physically.

They next contend that a confidential or fiduciary relationship existed between deceased and appellants. "The terms confidential and fiduciary are in general application synonymous. 'A confidential

relation exists between two persons, whether their relations be such as are technically fiduciary or merely informal, whenever one trusts in and relies on the other. The question is always whether or not trust is reposed.'" [Hedrick v. Hedrick, 168 S. W. (2d) 69, l. c. 74.] Confidential relations and undue influence are interrelated. [Hedrick v. Hedrick, *supra*.] Usually, proof of undue influence is connected with proof of confidential relations between the parties. Assuming deceased to have been in such a weakened physical and mental condition, at the time he executed the will, so as to more likely fall an easy victim to the influence of a person or persons occupying confidential relations with him, the question first to be considered in this case is whether or not confidential relations did, in fact, exist between deceased and appellants. Evidence in support of the proposition is lacking. The mere fact that deceased lived in the home of appellants is not, alone, sufficient to establish fiduciary or confidential relations between the parties. [Winn v. Matthews, 235 Mo. App. 337, 137 S. W. (2d) 632.] If the rule were otherwise a decedent must, perforce, live in the home of a stranger else he cannot devise his property to those whom he prefers except in the knowledge that the burden will be on them to disprove confidential relationship.

There was no substantial evidence which tended to prove that appellants looked after deceased's business affairs. The evidence, on the whole, tended to prove that deceased, himself, collected debts due to him and to his wife's estate, drew checks on his bank account, sold his real estate, and leased his farm, all with none, or very little, assistance from either of appellants. Practically all of the evidence offered which tended to prove that either of appellants aided or advised him in the conduct of his business affairs (other than in making wills No. 2 and 3) consisted of testimony to the effect that deceased had made declarations to that effect from time to time. Such evidence was admitted over the objections of appellants. Ordinarily, such declarations, testified to by witnesses after testator's death, amount to hearsay evidence and cannot be considered for the purpose of establishing the truth or falsity of the facts purported to be stated therein. [6 Wigmore on Evidence, par. 1738, page 119; Gordon v. Burris, 141 Mo. 602, l. c. 613; Schierbaum v. Schemme, 157 Mo. 1, l. c. 16.] We cannot determine, from the state of the record, when the declarations proved herein were made, whether before or after the will was made. Evidence of such declarations should have been excluded (except for the purpose of establishing the state of mind of deceased) because the burden was on respondents to prove undue influence (Scherbaum v. Schemme, *supra*, l. c. 16); and such proof must be made by introduction of evidence shown to be properly admissible in the face of timely and proper objections made thereto. After elimination of the evidence of numerous declarations made by deceased there remains no substantial evidence of the existence of

confidential relations between deceased and appellants. There was evidence of declarations made by deceased concerning treatment received by him from appellants in their respective homes, and of their alleged influence, and exercise of such influence, over him. Such evidence was received over objection that same constituted no proof of the substance thereof. Such declarations constitute no evidence as to testator's home life, or of the influence of appellants over him. [Frohman v. Lowenstein, 303 Mo. 339, 260 S. W. 460, l. c. 465; Webster v. Leiman, 328 Mo. 1232, 44 S. W. (2d) 40, l. c. 44.]

Mere proof or confidential relations raises no presumption of undue influence. [Larkin v. Larkin,. 119 S. W. (2d) 351, l. c. 356.] To render a will invalid because of undue influence, in addition to proof of a fiduciary relation and of benefaction to the fiduciary or in his interest, there must also be proof, direct or circumstantial, that the fiduciary was active in causing the execution of the will and that, in fact, undue influence was exerted. [Pulitzer v. Chapman, 337 Mo. 298, l. c. 316, 85 S. W. (2d) 400, l. c. 401; Winn v. Matthews, 235 Mo. App. l. c. 346.]

In the case at bar, no competent or substantial evidence was offered which tended to prove that appellants exerted, or attempted to exert, any influence towards the execution of the will. in controversy. The uncontradicted evidence is to the effect that deceased went to the office of the scrivener, alone, and told him how he wanted the will drawn and that he went back later, alone, and signed and executed it; and respondents' evidence was to the effect that on each of the three occasions when either or both of appellants were present when the earlier wills were drawn or discussed, appellants approved of terms whereby all parties hereto would share equally in the property. It is also to be remembered that the contested will was executed after deceased had quarreled with his son and left his home, and at a time when Caroline Doll and Clara Emo owed money to deceased, or to the estate of his wife, and some difficulty was being encountered in the collection of these notes. These undisputed facts and circumstances argue against respondents' contention that the will is the product of undue influence exercised by appellants, of which there was, in fact, no substantial evidence.

The judgment should be reversed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed. All concur.